BRET D. LEWIS (Bar No. 166819)
Wellesley Courtyard
12304 Santa Monica Blvd.—107A
Los Angeles, CA  90025
Telephone:   (310) 207-0696
Facsimile:    (310) 362-8424
Bretlewis@aol.com

Attorneys for Plaintiffs
Carmen C. Boza and Luis R. Boza

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Carmen C. Boza, and Luis R. Boza<br><br>        Plaintiff,<br><br>    vs.<br><br>US Bank National Association, as Trustee for Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR6; All persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud upon plaintiff's title thereto; Does 1-10, inclusive.<br><br>        Defendants. | Case No.:   2:12-cv-06993-JAK(FMOx)<br>Assigned to:  Hon. John A. Kronstadt<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:    MARCH 11, 2013<br>Time:   8:30 A.M.<br>Ctrm:   750-7[th] FLOOR |

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | Legal standard for Rule 12(b)(6) motions | 9 |
| II. | Defendant's Introduction and Statement of Facts are improper and inconsistent with the purported Motion to Dismiss standards in this Circuit and should be completely disregarded and stricken | 10 |
| III. | Since the First Amended Complaint does not make any factual allegations about the validity of the securitization process, Defendant's discussion is truly a *non sequitur* | 10 |
| IV. | Defendant's Argument re Ownership of the Note is irrelevant | 11 |
| V. | Issues of Standing to Foreclose | 11 |
| VI. | Tender | 12 |
| VII. | Quiet Title | 12 |
| A. | Purpose | 12 |
| B. | Elements of Claim | 13 |
| C. | First Amended Complaint and Complaint | 13 |
| D. | Obligation extinguished | 14 |
| E. | Defendant's fraud | 19 |
| F. | Defendant's conversion and trespass to chattels | 21 |
| G. | Right of recoupment and offset | 22 |
| VIII. | Conclusion | |

# TABLE OF AUTHORITIES

**Page**

**California Cases**

*Badie v. Bank of Am.* (1998)
    67 Cal.App.4th 779                                          15

*Bank of Italy, NT & SA v. Bentley* (1933)
    217 Cal. 644                                               13

*Beckwith v. Dahl* (2012)
    205 Cal.App.4th 1039                                       18

*Boschma v. Home Loan Center, Inc.* (2011)
    198 Cal.App.4th 230                                        17

*Cortez v. Purolator Air Filtration Products Co.* (2000)
    23 Cal.4th 163                                             18

*Fischer v. First Internat. Bank* (2003)
    109 Cal.App.4th 1433                                       17

*Hibernia Sav. & Loan Soc. v. Lauffer* (1940)
    41 Cal.App.2d 725                                          14

*Jamgotchian v. Slender* (2009)
    170 Cal.App.4th 1384                                       19

*Juarez v. Arcadia Fin., Ltd.* (2007)
    152 Cal. App. 4th 889                                      18

*Korea Supply Co. v. Lockheed Martin Corp.* (2003)
    29 Cal.4th 1134                                            18

*Laux v. Freed* (1960)
    53 Cal.2d 512                                              14

*Mirkin v.Wasserman* (1993)
    5 Cal.4th 1082                                             18

*Monterey S. P. P'ship v. W. L. Bangham* (1989)
    49 Cal. 3d 454                       11,13

*Neal v. State Farm Ins. Cos.* (1961)
    188 Cal.App.2d 690                15

*Newman v. Cornelius* (1970)
    3 Cal.App.3d 279                  10

*Peterson v.Gibbs* (1905)
    147 Cal. 1                          11

*Roddenberry v. Roddenberry* (1996)
    44 Cal.App.4th 634                18

*SCC Acquisitions, Inc. v. Central Pacific Bank* (2012)
    207 Cal.App.4th 859               18

*Spector v. National Pictures Corp.* (1962)
    201 Cal.App.2d 217                15

*Stevenson v. Oceanic Bank* (1990)
    223 Cal.App.3d 306                15

*Tyler* v. *Currier*
    147 Cal. 31                       13

**Federal Cases**

*Balistreri v. Pacifica Police Dep't* (9th Cir. 1990)
    901 F.2d 696                      7

*Bell Atl. Corp. v. Twombly* (2007)
    550 U.S. 544                      7

*Broam v. Bogan* (9th Cir. 2003)
    320 F.3d 1023                    7

*De La Cruz v. Tormey* (9th Cir. 1978)
    582 F.2d 45                      7

*Monaco v. Bear Stearns Residential Mortg. Corp.* (C.D. Cal. 2008)
    2008 US Dist LEXIS 26235      17

*Yulaeva v. Greenpoint Mortg. Funding, Inc.* (E.D. Cal. Sept. 3, 2009)
    2009 U.S. Dist. LEXIS 79094      11

**California Statutes**

*Business & Professions Code* §17200      17,18

*Civil Code* §1644      16

*Civil Code* §1645      16

*Civil Code* §1649      16

*Civil Code* §1654      14,16

*Code of Civil Procedure* § 760.010(a)      11

*Code of Civil Procedure* § 761.020      11

*Commercial Code* § 1101      24

*Commercial Code* § 3305      21,26,27

*Commercial Code* § 3306      21

*Commercial Code* § 3311      22,26,27

*Commercial Code* § 8102      22,27

*Commercial Code* § 8107      24

*Commercial Code* § 8210      24

*Commercial Code* § 8501      23,24,27

*Commercial Code* § 8503      25,27

*Commercial Code* § 8504      25,26

*Commercial Code* § 8505                                        25

*Commercial Code* § 8508                                        25

*Commercial Code* § 8511                                        25


**<u>Federal Statutes</u>**

15 U.S.C. § 1641(g)                                             14


**<u>Federal Rules</u>**

Fed. R. Civ. P.  Rule12(b)(6)                                   7,10

Fed. R. Civ. P.  Rule 59                                        11

Fed. R. Civ. P.  Rule 60                                        11


**<u>Secondary Authority</u>**

Restatement Second of Torts §218                               19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Legal standard for Rule 12(b)(6) motions

A motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6) challenges the legal sufficiency of the pleadings. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

In evaluating the motion, the court must construe the pleadings in the light most favorable to the non-moving party, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom. See, e.g., *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). This legal standard should not be lost in this proceeding and neither Defendant nor the court should ignore Plaintiff's allegations set forth in the First Amended Complaint because this is the standard applicable in the 9th circuit. Moreover, the Supreme Court has held that in order to survive a 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### II.    Defendant's Introduction and Statement of Facts are improper and inconsistent with the purported Moton to Dismiss standards in this Circuit and should be completely disregarded and stricken

If the court must construe the pleadings in the light most favorable to the non-moving party, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom. If this means what is says, then only the facts stated in the Plaintiff's pleading have any meaning with the only exception of material that is property judicially noticed. So this means that Defendant's "Introduction" and "Statement of Facts" should not be considered by the court and is misdirection at best.

1  Thus, Plaintiff "objects" to Defendant's improper insertion of surplusage into this
2  specific motion process.

3

4  **III.**   **Since the First Amended Complaint does not make any factual allegations**
5  **about the validity of the securitization process, Defendant's discussion is truly**
6  **a _non sequitur_?**

7  Defendant spends a lot of space [Mot. 5:26-8:4] arguing that securitization does
8  not invalidate the loan and that Plaintiff lacks standing to challenge any assignment of
9  the loan.

10  All of the cases cited by Defendant in this section are "*inapposite*" to the issues of
11  whether Plaintiff has alleged sufficient facts to state a Claim for Quiet Title on the basis
12  that through the process of securitization, Plaintiff's obligation has been extinguished by
13  operation of the contractual agreements between the parties and as a matter of law.

14  So, the issue presented to this Court as a matter of law is: "If a purported obligee
15  (and all successors in interest) to a mortgage transaction uses the incidents of the
16  transaction, including the note and deed of trust as assets to derive revenues in excess of
17  the purported obligation, and fails to disclose at the onset of the purported obligation that
18  it intends to use such assets to derive revenues in excess of the purported obligation, is
19  the obligor entitled to any benefit for such excess revenues?"

20  Plaintiff has presented this issue crystal clearly in her First Amended Complaint
21  [First Amd. Cmplt . ¶¶ 6-9, 13-16, 34-43].

22  It is painfully obvious and instructive that Defendant flees from this issue and "as
23  a matter of law" refuses and completely fails to in any manner dispute Plaintiff's
24  allegations of fact [Defendant fails to present any authority contra to ¶¶ 34-43 of the First
25  Amd. Cmplt.]

26  Since, Defendant cannot present any legal basis for its arbitrary opinions and
27  conclusions, Plaintiff will discuss the relevant law as to the allegations in the First
28  Amended Complaint.

## IV.    Defendant's Argument re Ownership of the Note is irrelevant

Defendant next argues that it doesn't have to prove ownership of the Note [Mot. 8:7-10:17.]

The Banking Bar of California has gone to great lengths to cloud and misdirect judicial understanding of this issue. Present defense counsel notwithstanding. Due to the amended pleading, the only issue for this Court's consideration is whether Plaintiff has stated sufficient facts for a Claim for Quiet Title. Thus, Defendant's discussion is superfluous and purposeful obfuscationat best.

## V.    Issues of Standing to Foreclose

Defendant argument that there is no requirement for a party foreclosing to have any association whatsoever with the original Note, *supra*, and their argument of estoppel [Mot. 10:20—11:13] is a restatement of the first Motion to Dismiss. Plaintiff reasserts its discussion in its Opposition as to these issues as though set forth in full. It should not be the rulings of this Court that (1) A complete stranger to the Note and Deed of Trust can proceed with a foreclosure in California; (2) Inconsistencies and discrepancies in the assignments of Notes and Deed of Trust are "no blame" and business as usual and are mere trifles in the scheme of making sure the banks secure as much real estate as possible! **We have alleged facts in the FAC that demonstrate that the chain of title is not complete and does not work.** Again, due to the amended pleading, the only issue for this Court's consideration is whether Plaintiff has stated sufficient facts for a Claim for Quiet Title. Thus, Defendant's discussion is superfluous and purposefully obfuscating at best.

## VI.    Tender

Ancillary to the main discussion below of whether or not Plaintiff states enough facts to get past a Motion to Dismiss as to a Claim for Quiet Title, Defendant states the

1  proposition that Plaintiff cannot proceed unless Plaintiff alleges she paid the debt [Mot.

2  12:4-13:13].

3      First, assuming Defendant read the First Amended Complaint, ¶¶ 6-9, 13-16, 36-

4  43 of the First Amended Complaint describes, discusses, alleges, states, that Plaintiff's

5  purported, alleged, illusory "debt" was paid 10-20 times over due to the fraudulent

6  securitization process admitted to by Defendant in their own exhibits. [See Docket/ECF

7  #41, Docket/ECF #41-1, Docket/ECF #41-2, Docket/ECF #41-3, Docket/ECF #41-4.]

8      Second, all cases cited by the Defendant in its Motion, discuss payment to the

9  mortgagor!! Defendant has failed to establish it is a mortgagor or even a beneficiary in

10  this matter and Plaintiff disputes this fact in the FAC. In fact, Defendant's only

11  attempted proof demonstrated that the Note never got to Defendant. This is rather

12  unnecessary since we all know that under the 12(b)(6) standards, this becomes an

13  evidentiary issue since Plaintiff has alleged in volumes that she has already satisfied the

14  purported, alleged, illusory "debt."

15

16  **VII.   Quiet Title**

17  **A.   Purpose**

18      The purpose of a quiet title action is  'to finally settle and determine, as

19  between the parties, all conflicting claims to the property in controversy, and to decree to

20  each such interest or estate therein as he may be entitled to.' " *Newman v. Cornelius*

21  (1970) 3 Cal.App.3d 279, 284(quoting *Peterson v.Gibbs* (1905) 147 Cal. 1, 5.)

22  **B.   Elements of Claim**

23      "Under California law, a claim for quiet title must include a) a description of the

24  property, including both its legal description and its street address, b) the title of the

25  plaintiff and the basis of the title, c) the adverse claims to the title of the plaintiff, d) the

26  dates as of which the determination is sought, e) and a prayer for the determination of the

27  title of the plaintiff." Citing *Cal. Code Civ. Proc.* § 761.020. *Yulaeva v. Greenpoint*

28

*Mortgage Funding, Inc.*, 2009 U.S. Dist. LEXIS 79094, *24-*25(E.D. Cal. Sept. 3, 2009).

**C.   First Amended Complaint and Complaint**

Plaintiff's first amended complaint identifies the property by address and legal description [First Amd. Cmplt.¶ 21].  Plaintiff alleges that she is the owner of the record of the property and hold legal title [First Amd. Cmplt. ¶ 22].

Plaintiff alleges the basis for the adverse claim is Defendant's assertion of the power of sale under the Deed of Trust. [First Amd. Cmplt.¶¶ 23-26].  "The right of sale provided by the deed of trust is an interest in the property." " This interest, the beneficiaries' power to cause a sale of the property, is effectively a lien on the property." *Yulaeva* at *26-*27, citing *Monterey S. P. P'ship v. W. L. Bangham*, 49 Cal. 3d 454, 460, 261 Cal. Rptr. 587, 777 P.2d 623 (1989). "Cal. Code Civ. Pro. § 760.010(a) provides that a lien may properly be the subject of a quiet title action." *Id.*

Plaintiff identified the date of the filing of the complaint as the date for which determination is sought. [RJN #1 , Compl . ¶ 29]. Plaintiff inadvertently failed to plead this allegation in the First Amended Complaint. Plaintiff can refer to the previous pleadings as an example that this was the intent of Plaintiff in the pleadings and Plaintiff would be entitled to relief under Fed. R.Civ. Proc. Rules 59 & 60 and asserts to this Court that unless we are engaged in a "gotcha" and form over substance posture, this is such a hyper-technicality that if this was the only issue at stake to render assistance to the Defendant, Plaintiff is confident of a reversal on appeal and should be given leave to amend should this be on the basis for the court's ruling.

Plaintiff seeks a judicial determination that Defendant has no interest or title to exercise the power of sale in the Deed of Trust and proceed with a non-judicial foreclosure. [First Amd. Cmplt.¶¶ 26, 44, 45.]

**D.   Obligation extinguished**

Probably the hardest concept to grasp in this case is the allegations by the Plaintiff that the "obligation" has been satisfied. However, according to California law, once the

1   "obligation" has been satisfied, anyone including the Defendant has no right or power to

2   do anything but reconvey title [ understood as equitable title] to the Plaintiff.

3   Plaintiff has articulated this legal concept and thanks to the Defendant has a significant

4   document such as the Pooling & Servicing Agreement to demonstrate to this Court that

5   there is more than "smoke" to the allegations. One would think under existing practice

6   that everything Plaintiff has shown this Court allows the Plaintiff to at least get to the

7   summary judgment stage. However, should this be wishful thinking on the part of

8   Plaintiff, despite all the pronouncements by the California courts both state and federal,

9   Plaintiff submits that no plaintiff would never be allowed to reach a summary judgment

10  stage under the conditions and allegations presented in this case [See Mot. 5:22-24 solely

11  based on Defendant's unsupported comments such as "faulty legal theories", "threadbare

12  recitals" with boilerplate regurgitation which is routinely accepted by state and federal

13  courts without analysis.]

14      1.      **Allegations in the First Amended Complaint**

15          ¶¶ 6-9, 13-16 of the First Amended Complaint details specific factual

16  allegations of how Plaintiff's Loan was used as an asset to create multiple revenue

17  streams bringing revenues to the beneficiaries under the Note and Deed of Trust far

18  exceeding the purported underlying obligation. Plaintiff's factual allegations are not in a

19  vacuum and have specific evidentiary support from Defendant's own filing of the

20  extensive Pooling and Servicing Agreement (hereafter "PSA") which must be judicially

21  recognized since it was used as evidence in the great Preliminary Injunction hearings

22  [See Docket/ECF #41, Docket/ECF #41-1, Docket/ECF #41-2, Docket/ECF #41-3,

23  Docket/ECF #41-4.]

24          ¶34 of the First Amended Complaint states: "Defendant's process of

25  securitization and open markets hypothecation of Plaintiffs' asset/loan/mortgage

26  received revenue streams beyond the amount stated  in the Note and Deed of Trust."

27          ¶35 of the First Amended Complaint states: "Under California law, when a

28  mortgagor/beneficiary receives monies which equal the amount stated in the Note/Deed

1  of Trust, the power of sale is extinguished by operation of law and the trustee has no
2  recognized power to do anything but reconvey title to the mortgagee/trustor."

3       So, if the standards articulated above are truly the standards by which this
4  Motion and Plaintiff's First Amended Complaint are judged, then these allegations must
5  be accepted as true.

6      **2.**   **California law**

7      *Bank of Italy, NT & SA v. Bentley* (1933) 217 Cal. 644, 657 provides that the
8  estate of the trustee ceases upon payment of the debt. Citing *Tyler* v. *Currier*, 147 Cal.
9  31, 36.

10      *Civil Code* §2941(b)(1) provides in relevant part: "Within 30 calendar days
11  after the obligation secured by any deed of trust has been satisfied, the beneficiary or the
12  assignee of the beneficiary shall execute and deliver to the trustee the original note, deed
13  of trust, request for a full reconveyance, and other documents as may be necessary to
14  reconvey, or cause to be reconveyed, the deed of trust."

15      *Monterey S.P. Partnership v. W. L. Bangham, Inc.* (1989) 49 Cal.3d 454,
16  460 provides that when a debt secured by the deed of trust is satisfied there is an
17  obligation to reconvey title under *Civil Code* §2941(b) which is nothing more than the
18  release of the lien of the deed of trust.

19      **3.**   **Evidence**

20      Defendant's Request for Judicial Notice [Docket/ECF #66] provides further
21  evidence of Plaintiff's position.

22      ¶23 of The Deed of Trust [Docket/ECF #66 at p. 82] provides in relevant
23  part: "Upon payment of all sums secured by this Security Instrument, Lender shall
24  request Trustee to reconvey the Property and shall surrender this Security Instrument and
25  all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall
26  reconvey the Property without warranty to the person or persons legally entitled to it."

27      ¶20 of The Deed of Trust [Docket/ECF #66 at p. 80] provides in relevant
28  part: "The Note or a partial interest in the Note (together with this Security Instrument)

1  can be sold one or more times without prior notice to Borrower." [Defendant cites this

2  language as the basis for the absurd position that Plaintiff have no legal or contractual

3  right to notice of a change in the Note holder (Mot. 9:5-9). This is contrary of course to

4  15 U.S.C. § 1641(g).]

5      **4.**    **Contractual construction as a matter of California law**

6        *Civil Code* §1654 provides: "In cases of uncertainty not removed by the

7  preceding rules, the language of a contract should be interpreted most strongly against

8  the party who caused the uncertainty to exist."

9        The law in California is clear as to contractual construction that an

10  instrument in writing is construed most strongly against party who drafted it or caused it

11  to be drafted. *Laux v. Freed* (1960) 53 Cal.2d 512, 524. Of course, Defendant may want

12  to contest that anything is in writing for purposes of their Reply. However, for this

13  opposition, Plaintiff presumes [actually indisputable facts] that the Note and Deed of

14  Trust are instruments in writing drafted by someone other than Plaintiff and since

15  Defendant clings to these documents, Defendant get to deal with this construction issue.

16        This construction has particular application to mortgages in that a mortgage

17  that contains any uncertainty as to its meaning must be construed most strongly against

18  the drafting party. *Hibernia Sav. & Loan Soc. v. Lauffer* (1940) 41 Cal.App.2d 725, 731.

19  Of course, Defendant must vehemently trivialize a mortgage and a deed of trust which

20  will necessarily divert everyone's attention from the real issues at hand and the fact that

21  every mortgage and every deed of trust in the State of California since it became a State

22  in the federalized system, has been "an instrument in writing."

23        In California, this construction is further applied to situations of adhesion

24  contracts (*Neal v. State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 695) and against

25  assignees (*Spector v. National Pictures Corp.* (1962) 201 Cal.App.2d 217, 225).

26        A case that most clearly articulates the role of this court and the necessary

27  interpretational model which is required for ¶¶20 and 23 of The Deed of Trust is *Badie v.*

28  *Bank of Am.* (1998) 67 Cal.App.4th 779 (hereafter "*Badie*").

1    *Badie* involved the interpretation of a bank's form ADR language and credit

2    account agreement. The Court engaged in extensive discussion of the interpretation

3    standards and approach in California to contractual analysis.

4    "When a dispute arises over the meaning of contract language, the court

5    must decide whether the language is 'reasonably susceptible' to the interpretations urged

6    by the parties. [Citation.]" *Id.* at 798. "Whether the contract is reasonably susceptible to a

7    party's interpretation can be determined from the language of the contract itself [citation]

8    or from extrinsic evidence of the parties' intent [citations]." *Id.*

9    "If the contract is capable of more than one reasonable interpretation, it is

10   ambiguous [citations], and it is the court's task to determine the ultimate construction to

11   be placed on the ambiguous language by applying the standard rules of interpretation in

12   order to give effect to the mutual intention of the parties [citation.]" *Id.* "When

13   ambiguities in a standardized contract, like the account agreement involved here, cannot

14   be dispelled by application of the other rules of contract interpretation, they are resolved

15   against the drafter. [Citations.]" *Id.*  "Interpretation of a contract is solely a question of

16   law unless the interpretation turns upon the credibility of extrinsic evidence. [Citations.]"

17   *Id.* at 799.

18   "Even where extrinsic evidence is admitted to interpret a contract, unless it

19   is conflicting and requires a determination of credibility, the reviewing court is not

20   bound by the trial court's interpretation. [Citation.]" *Id.*  (*Stevenson v. Oceanic Bank*,

21   *supra*, at p. 315.) "We ascertain the intent of the parties by considering an agreement as a

22   whole, not by interpreting a provision in isolation. [Citations.] *Id.* at 800. "We may

23   consider the circumstances under which an agreement was made, including its object,

24   nature, and subject matter [citations] and must be mindful of the rule that, 'However

25   broad may be the terms of a contract, it extends only to those things concerning which it

26   appears that the parties intended to contract' [citation.]" *Id.*

27   "We must also provide an interpretation that will make an agreement lawful,

28   operative, definite, reasonable, and capable of being carried into effect, and must avoid

an interpretation that would make it harsh, unjust or inequitable. [Citations.]" *Id.* "We interpret the words used in an agreement according to their ordinary and popular sense, unless the parties ascribed a special or technical meaning to them (Civ. Code, §§ 1644, 1645), and we also interpret any ambiguous language in the sense in which the promisor believed, at the time the agreements were entered into, that the promisee understood it (Civ. Code, § 1649)." *Id.* at 800-801.

"Finally, if the uncertainty is not removed by application of the other rules of interpretation, a contract must be interpreted most strongly against the party who prepared it. [Citations.] This last rule is applied with particular force in the case of adhesion contracts. [Citations.]" *Id.* "Further, to the extent that application of these canons of construction has not removed all uncertainty concerning the meaning of the provision, we resort to the rule that ambiguous contract language must be interpreted most strongly against the party who prepared it (Civ. Code, § 1654), a rule that applies with particular force to the interpretation of contracts of adhesion, like the account agreements here. [Citations.]" *Id.* at 803.

### 5. **Application**

Based on the above discussion, this Court is required to interpret ¶20 and ¶23 of The Deed of Trust [Docket/ECF #66 at pp. 80 and 82] in respect to Plaintiff's allegations and contentions in the First Amended Complaint. It seems virtually impossible to reconcile ¶20 of the Deed of Trust with the PSA [See Docket/ECF #41, Docket/ECF #41-1, Docket/ECF #41-2, Docket/ECF #41-3, Docket/ECF #41-4.]

Should this court find ambiguity and not construe it against Defendant [or the drafter or Defendant's illusory assignor or the trust or whomever], it must require this matter to proceed to at least the stage of summary judgment. See *Fischer v. First Internat. Bank* (2003) 109 Cal.App.4th 1433; *Monaco v. Bear Stearns Residential Mortg. Corp.* (C.D. Cal. 2008) 2008 US Dist LEXIS 26235.

### E. **Defendant's fraud**

#### 1. **Allegations in the First Amended Complaint**

¶¶ 36-38 of the First Amended Complaint alleges the fraudulent concealment of ¶20 of the Deed of Trust as exemplified by the subsequent reality of the PSA as a basis for the remedy of disgorgement and restitution of *Business & Professions Code* §17200. Since there is no question that Defendant assumes responsibility for the Deed of Trust [Defendant definitely assumes it can foreclosure based on the Deed of Trust], then again this Court as a matter of law must determine if the contrast between ¶20 of the Deed of Trust and the PSA demonstrate enough detailed factual illustration for a basis of fraudulent concealment that gives rise to a quiet title application.

## 2.   <u>California law</u>

"[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248.

"A duty to speak may arise in four ways: it may be directly imposed by statute or other prescriptive law; it may be voluntarily assumed by contractual undertaking; it may arise as an incident of a relationship between the defendant and the plaintiff; and it may arise as a result of other conduct by the defendant that makes it wrongful for him to remain silent." *SCC Acquisitions, Inc. v. Central Pacific Bank* (2012) 207 Cal.App.4th 859, 860.

"Even if a fiduciary relationship is not involved, a non-disclosure claim arises when the defendant makes representations but fails to disclose additional facts which materially qualify the facts disclosed, or which render the disclosure likely to mislead." *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 666.

"[F]raudulent intent is an issue for the trier of fact to decide." *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1061.

"Contrary to plaintiffs' assertion, it is not logically impossible to prove reliance on an omission. One need only prove that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1093.

Under *Business & Professions Code* §17200, Plaintiff is entitled as a remedy to restitution and disgorgement of any money and property which Plaintiff has a vested interest which is wrongfully held or taken by Defendant. This would include "title" since it is a property interest. Thus, Plaintiff is entitled to Quiet Title if Plaintiff proves entitlement to a disgorgement/restitution of money sufficient to satisfy the alleged and illusory obligation and/or a disgorgement/restitution of title. See *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 177-78; *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1149; *Juarez v. Arcadia Fin., Ltd.* (2007) 152 Cal. App. 4th 889, 914-18.

**3.    Evidence**

Defendant's Request for Judicial Notice [Docket/ECF #66] provides further evidence of Plaintiff's position.

¶20 of The Deed of Trust [Docket/ECF #66 at p. 80] provides in relevant part: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."

**4.    Contractual construction as a matter of California law**

See section VIII. D. 4. above.

**5.    Application**

Based on the above discussion, Plaintiff's allegations of fraud through application of California's UCL applies in context to the claim for quiet title.

**F.    Defendant's conversion and trespass to chattels**

1      **1.**   <u>**Allegations in the First Amended Complaint**</u>

2      ¶¶ 6-9, 13-16 of the First Amended Complaint details specific factual

3 allegations that support the allegations of ¶¶ 39-40.

4      **2.**   <u>**California law**</u>

5      The case of *Jamgotchian v. Slender* (2009)170 Cal.App.4th 1384 articulates

6 the law of Trespass to Chattels in California. "Though not amounting to conversion, the

7 defendant's interference must, to be actionable, have caused some injury to the chattel or

8 to the plaintiff's rights in it. Under California law, trespass to chattels 'lies where an

9 intentional interference with the possession of personal property *has proximately caused*

10 *injury.*[Citation.] *Id.* at 1400. "In cases of interference with possession of personal

11 property not amounting to conversion, 'the owner has a cause of action for trespass or

12 case, *and may recover only the actual damages suffered by reason of the impairment of*

13 *the property or the loss of its use.*' " [Citations.] *Id.* at 1400-1401. "Under section 218 of

14 the Restatement Second of Torts, dispossession alone, without further damages, is

15 actionable (see *id.,* par. (a) & com. d, pp. 420-421), but other forms of interference

16 require some additional harm to the personal property or the possessor's interests in it.

17 (*Id.,* pars. (b)-(d).) 'The interest of a possessor of a chattel in its inviolability, unlike the

18 similar interest of a possessor of land, is not given legal protection by an action for

19 nominal damages for harmless intermeddlings with the chattel. In order that an actor who

20 interferes with another's chattel may be liable, his conduct must affect some other and

21 more important interest of the possessor. *Therefore, one who intentionally intermeddles*

22 *with another's chattel is subject to liability only if his intermeddling is harmful to the*

23 *possessor's materially valuable interest in the physical condition, quality, or value of the*

24 *chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or*

25 *some other legally protected interest of the possessor is affected as stated in Clause (c).*

26 Sufficient legal protection of the possessor's interest in the mere inviolability of his

27 chattel is afforded by his privilege to use reasonable force to protect his possession

28 against even harmless interference.' " [Citation.] *Id.*

3. **Evidence**

PSA [See Docket/ECF #41, Docket/ECF #41-1, Docket/ECF #41-2, Docket/ECF #41-3, Docket/ECF #41-4.]

¶20 of The Deed of Trust [Docket/ECF #66 at p. 80] provides in relevant part: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."

4. **Contractual construction as a matter of California law**

See section VIII. D. 4. above.

5. **Application**

This Court must as a matter of course determine whether as a matter of law there is sufficient factual allegations to raise the issue of a trespass to chattels and whether such factual allegations and issues impact Plaintiff's right to claim quiet title.

G. **Right of recoupment and offset**

1. **Allegations in the First Amended Complaint**

¶¶ 6-9, 13-16 of the First Amended Complaint details specific factual allegations that support the allegations of ¶¶ 41-43.

2. **California law**

*Commercial Code* §3305 provides:
"(a) Except as stated in subdivision (b), the right to enforce the obligation of a party to pay an instrument is subject to all of the following: (1) A defense of the obligor based on (A) infancy of the obligor to the extent it is a defense to a simple contract, (B) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (C) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (D) discharge of the obligor in insolvency proceedings. (2) A defense of the obligor stated in another section of this division or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract. (3) A claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to

reduce the amount owing on the instrument at the time the action is brought. (b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in paragraph (1) of subdivision (a), but is not subject to defenses of the obligor stated in paragraph (2) of subdivision (a) or claims in recoupment stated in paragraph (3) of subdivision (a) against a person other than the holder. (c) Except as stated in subdivision (d), in an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (Section 3306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument. An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument. (d) In an action to enforce the obligation of an accommodation party to pay an instrument, the accommodation party may assert against the person entitled to enforce the instrument any defense or claim in recoupment under subdivision (a) that the accommodated party could assert against the person entitled to enforce the instrument, except the defenses of discharge in insolvency proceedings, infancy, and lack of legal capacity."

*Commercial Code* §3311 provides:

"(a) If a person against whom a claim is asserted proves that (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, and (3) the claimant obtained payment of the instrument, the following subdivisions apply. (b) Unless subdivision (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim. (c) Subject to subdivision (d), a claim is not discharged under subdivision (b) if either of the following applies: (1) The claimant, if an organization, proves that (A) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (B) the instrument or accompanying communication was not received by that designated person, office, or

place. (2) The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This paragraph does not apply if the claimant is an organization that sent a statement complying with subparagraph (A) of paragraph (1). (d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim."

*Commercial Code* §8102 provides:
"(a) In this division: (1) "Adverse claim" means a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset. (2) "Bearer form," as applied to a certificated security, means a form in which the security is payable to the bearer of the security certificate according to its terms but not by reason of an indorsement. (3) "Broker" means a person defined as a broker or dealer under the federal securities laws, but without excluding a bank acting in that capacity. (4) "Certificated security" means a security that is represented by a certificate. (5) "Clearing corporation" means any of the following: (A) A person that is registered as a "clearing agency" under the federal securities laws. (B) A federal reserve bank. (C) Any other person that provides clearance or settlement services with respect to financial assets that would require it to register as a clearing agency under the federal securities laws but for an exclusion or exemption from the registration requirement, if its activities as a clearing corporation, including promulgation of rules, are subject to regulation by a federal or state governmental authority. (6) "Communicate" means to either: (A) Send a signed writing. (B) Transmit information by any mechanism agreed upon by the persons transmitting and receiving the information. (7) "Entitlement holder" means a person identified in the records of a securities intermediary as the person having a security entitlement against the securities intermediary. If a person acquires a security entitlement by virtue of paragraph (2) or (3) of subdivision (b) of Section 8501, that person is the entitlement holder. (8) "Entitlement order" means a notification communicated to a securities intermediary directing transfer or redemption of a financial asset to which the entitlement holder has a security entitlement. (9) "Financial asset," except as otherwise provided in Section 8103, means any of the following: (A) A security. (B) An obligation of a person or a share, participation, or other interest in a

person or in property or an enterprise of a person, that is, or is of a type, dealt in or traded on financial markets, or that is recognized in any area in which it is issued or dealt in as a medium for investment. (C) Any property that is held by a securities intermediary for another person in a securities account if the securities intermediary has expressly agreed with the other person that the property is to be treated as a financial asset under this division. As context requires, the term means either the interest itself or the means by which a person's claim to it is evidenced, including a certificated or uncertificated security, a security certificate, or a security entitlement. (10) [Reserved] (11) "Endorsement" means a signature that alone or accompanied by other words is made on a security certificate in registered form or on a separate document for the purpose of assigning, transferring, or redeeming the security or granting a power to assign, transfer, or redeem it. (12) "Instruction" means a notification communicated to the issuer of an uncertificated security that directs that the transfer of the security be registered or that the security be redeemed. (13) "Registered form," as applied to a certificated security, means a form in which both of the following apply: (A) The security certificate specifies a person entitled to the security. (B) A transfer of the security may be registered upon books maintained for that purpose by or on behalf of the issuer, or the security certificate so states. (14) "Securities intermediary" means either: (A) A clearing corporation. (B) A person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity. (15) "Security," except as otherwise provided in Section 8103, means an obligation of an issuer or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer that is all of the following: (A) It is represented by a security certificate in bearer or registered form, or the transfer of it may be registered upon books maintained for that purpose by or on behalf of the issuer. (B) It is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations. (C) It is either of the following: (i) It is, or is of a type, dealt in or traded on securities exchanges or securities markets. (ii) It is a medium for investment and by its terms expressly provides that it is a security governed by this division. (16) "Security certificate" means a certificate representing a security. (17) "Security entitlement" means the rights and property interest of an entitlement holder with respect to a financial asset specified in Chapter 5 (commencing with Section 8501). (18) "Uncertificated security" means a security that is not represented by a certificate. (b) Other definitions applying to this division and the sections in which they appear are: Appropriate person. Section 8107. Control. Section 8106. Delivery.

23

Section 8301. Investment company security. Section 8103. Issuer. Section 8201. Overissue. Section 8210. Protected purchaser. Section 8303. Securities account. Section 8501. (c) In addition, Division 1 (commencing with Section 1101) contains general definitions and principles of construction and interpretation applicable throughout this division. (d) The characterization of a person, business, or transaction for purposes of this division does not determine the characterization of the person, business, or transaction for purposes of any other law, regulation, or rule."

Commercial Code §8501 provides:
"(a) "Securities account" means an account to which a financial asset is or may be credited in accordance with an agreement under which the person maintaining the account undertakes to treat the person for whom the account is maintained as entitled to exercise the rights that comprise the financial asset. (b) Except as otherwise provided in subdivisions (d) and (e), a person acquires a security entitlement if a securities intermediary does any of the following: (1) Indicates by book entry that a financial asset has been credited to the person's securities account. (2) Receives a financial asset from the person or acquires a financial asset for the person and, in either case, accepts it for credit to the person's securities account. (3) Becomes obligated under other law, regulation, or rule to credit a financial asset to the person's securities account. (c) If a condition of subdivision (b) has been met, a person has a security entitlement even though the securities intermediary does not itself hold the financial asset. (d) If a securities intermediary holds a financial asset for another person, and the financial asset is registered in the name of, payable to the order of, or specially endorsed to the other person, and has not been endorsed to the securities intermediary or in blank, the other person is treated as holding the financial asset directly rather than as having a security entitlement with respect to the financial asset. (e) Issuance of a security is not establishment of a security entitlement."

Commercial Code §8503 provides:
"(a) To the extent necessary for a securities intermediary to satisfy all security entitlements with respect to a particular financial asset, all interests in that financial asset held by the securities intermediary are held by the securities intermediary for the entitlement holders, are not property of the securities intermediary, and are not subject to claims of creditors of the securities intermediary, except as otherwise provided in Section 8511. (b) An entitlement holder's property interest with respect to a particular financial asset under subdivision (a) is a pro rata property interest in all interests in that financial asset held by the securities intermediary,

without regard to the time the entitlement holder acquired the security entitlement or the time the securities intermediary acquired the interest in that financial asset. (c) An entitlement holder's property interest with respect to a particular financial asset under subdivision (a) may be enforced against the securities intermediary only by exercise of the entitlement holder's rights under Sections 8505 to 8508, inclusive. (d) An entitlement holder's property interest with respect to a particular financial asset under subdivision (a) may be enforced against a purchaser of the financial asset or interest therein only if all of the following conditions are met: (1) Insolvency proceedings have been initiated by or against the securities intermediary. (2) The securities intermediary does not have sufficient interests in the financial asset to satisfy the security entitlements of all of its entitlement holders to that financial asset. (3) The securities intermediary violated its obligations under Section 8504 by transferring the financial asset or interest therein to the purchaser. (4) The purchaser is not protected under subdivision (e). The trustee or other liquidator, acting on behalf of all entitlement holders having security entitlements with respect to a particular financial asset, may recover the financial asset, or interest therein, from the purchaser. If the trustee or other liquidator elects not to pursue that right, an entitlement holder whose security entitlement remains unsatisfied has the right to recover its interest in the financial asset from the purchaser. (e) An action based on the entitlement holder's property interest with respect to a particular financial asset under subdivision (a), whether framed in conversion, replevin, constructive trust, equitable lien, or other theory, may not be asserted against any purchaser of a financial asset or interest therein who gives value, obtains control, and does not act in collusion with the securities intermediary in violating the securities  intermediary's obligations under Section 8504."

### 3.   **Evidence**

PSA [See Docket/ECF #41, Docket/ECF #41-1, Docket/ECF #41-2, Docket/ECF #41-3, Docket/ECF #41-4.]

Defendant's Request for Judicial Notice [Docket/ECF #66] provides further evidence of Plaintiff's position.

¶(A) of The Deed of Trust [Docket/ECF #66 at p. 70] provides " 'Security Instrument' means this document, which is dated MAY 08, 2006 together with all Riders to this document."

¶23 of The Deed of Trust [Docket/ECF #66 at p. 82] provides in relevant part: "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it."

¶20 of The Deed of Trust [Docket/ECF #66 at p. 80]

### 4.   **Contractual construction as a matter of California law**

See section VII. D. 4. above.

### 5.   **Application**

Defendant's assert that the Note can be sold [Mot. 9:5-8] See also ¶20 of The Deed of Trust [Docket/ECF #66 at p. 80]. Under California Division 3 of the Commercial Code, this makes it a "negotiable instrument." Thus, under the provisions of *Commercial Code* §3305 and 3311, Plaintiff can assert a claim of recoupment and offset to any alleged debt being asserted by Defendant. So, this Court must as a matter of law must determine under these proceedings whether the history of the Note and Deed of Trust in question and the acts of creating a negotiable instrument out of the Note and Deed of Trust gives Plaintiff the right of recoupment and offset as established under California *Commercial Code* §§3305 and 3311.

Also, since the Deed of Trust and all incidents of the loan were "securitized" (See ¶(A) of The Deed of Trust [Docket/ECF #66 at p. 70]; PSA [See Docket/ECF #41, Docket/ECF #41-1, Docket/ECF #41-2, Docket/ECF #41-3, Docket/ECF #41-4.]) this Court as a matter of law must determine whether Plaintiff has the right to the proceeds of the use of such security under Division 8 of the California Commercial Code and specifically *Commercial Code* §§8102, 8501 and 8503.

## VIII.  **Conclusion**

For the reasons discussed and the arguments contained in this Opposition and the papers submitted for consideration, Plaintiff request that this Court deny Defendant's

Motion to Dismiss.

Dated:  February 18, 2013

/s/ Bret D. Lewis
Bret D. Lewis, Esq.
Attorney for Plaintiff s Carmen C. Boza and Lusi R. Boza

**PROOF OF SERVICE**

I, Bret D. Lewis, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 12304 Santa Monica Blvd.—107A, Los Angeles, California 90025. On February 18, 2013, I served a copy of the within document(s): PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed FedEx envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a FedEx agent for delivery.

☒ by ELECTRONIC MAIL, I caused the document(s) listed above to be served on the parties via CM/ECF email.

Wright Finlay & ZAK, LLP
T. Robert Finlay, Esq./Kathryn
Moorer, Esq.
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
rfinlay@wrightlegal.net
kmoorer@wrightlegal.net

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 18, 2013, at Los Angeles, California.

/s/ Bret D. Lewis